ROBERT L. BLAND, Judge.
In 1934 Colonel P. D. Shingleton was superintendent of the department of public safety of West Virginia. On the tenth of August of that year claimant, James R. Brockus, enlisted as a member of the department for a term of two years. He had previously served as a member of the department under several successive prior enlistments since 1920 when he retired from the United States Army. Upon said last mentioned enlistment, as was the case on former enlistments, he was appointed captain of a company or platoon. His salary *165 as such officer was fixed by statute at $2400.00 per year. After taking the oath and executing the bond prescribed by law, claimant entered upon the discharge of his official duties and served under and by virtue of his said enlistment and appointment until August 9, 1935, when Colonel Shingleton, superintendent of the department, made and entered an order granting him an indefinite leave of absence, without pay, privilege or prerogrative, a copy of which was duly transmitted to him. Thereafter, to wit, on August 10, 1936, the date of the expiration of the term for which claimant had enlisted as aforesaid, superintendent Shingleton made and entered a further order, a copy of which was duly served upon claimant, discharging him as a member of the department of public safety by reason of the expiration of his enlistment.
No part of the salary for the second year of the term of claimant’s enlistment was paid to him. By his claim in this proceeding he seeks to recover salary for said year. Such payment is resisted by the department of public safety. Various questions were raised upon the hearing, but in our judgment the claim is not one for which an award should be made by the court of claims. After the indefinite leave of absence above mentioned had been made, and notice thereof given to claimant, he addressed a letter to the superintendent of the department of public safety, under date of August 10, 1935, in which he said:
“Your order placing me on indefinite leave, without pay, received this morning. This appears to be an unusual method of eliminating an officer from the department. If my services have been unsatisfactory, or if I have committed an offense to justify such action, it would appear that the correct way to go . about the matter would be to discharge me outright.”
We are constrained to agree with this proposition. To say the least the circumstances attending the dismissal of claimant from service in the department were irregular and contrary to the course prescribed. by statute. The superintendent of the department of public safety is vested by statute with au *166 thority to suspend a member of the department for the good of the service. Article 2, section 19 of chapter 15 of the code provides that the superintendent may suspend or remove from the service any member of the department of public safety for any of the following causes, to wit: Refusing to obey the order of his superior officers; neglect of dfity; drunkenness; immorality; inefficiency; abuse of his authority; interfering with the lawful right of any person; participation in political primaries, conventions or elections, or any other cause that may in the opinion of the superintendent be necessary for the good of the service.
It does not appear from the record, however, that any formal charges were preferred against claimant, although when asked “Did you at any time during such period of enlistment and appointment receive any notice from the superintendent of any charges made or filed against you, written or oral?” he replied: “There was charges filed but as to the date I do not recall just at this time.” Claimant expressed' the opinion that such charges were preferred and that he had knowledge of them. When interrogated as to what they charged he answered “They stipulated certain immoral acts and other offenses committed back in 1921 or 22.” He further stated that it was possible that such charges were preferred in the summer of 1935. He observed: “I recall the superintendent visiting Fairmont, and he showed me these charges filed by a former lieutenant, and as to the date I am not sure of that, it might have been after this enlistment in 1934.” In any event there was no hearing afforded claimant upon any charges in the manner prescribed by the above cited statute. Presumably, from the facts disclosed by the record the superintendent of the department was of opinion that claimant should be relieved for “the good of the service.” This is made more apparent by the circumstances hereinafter detailed. In his letter of August 10, 1934, addressed to superintendent Shingleton, hereinbefore mentioned, claimant said: “Having been advised that I was to leave the department on August 10, after eighteen years service, I made application for disability retirement on July 22, 1935, under the act of March 9, 1935.” It thus appears that *167 as early as July 22, 1935, prior to the above mentioned order granting him an indefinite leave of absence, without pay, claimant knew that he was to retire from the service on the said tenth of August 1935. On July 17, 1935, Superintendent Shingleton had notified claimant that he had been given a leave of absence for fifteen days, and had directed him to turn over to Lieutenant Skeen command of Company A, and all uniforms and equipment issued. By special order no. 35, made on August 1, 1935, claimant was granted a further leave of absence of nine days from August 2, 1935 until August 10, 1935.
After claimant had made application for disability retirement his case was considered by a board of commissioners, composed of Honorable Harold A. Ritz and Honorable John L. Hatfield. Claimant appeared' before the board and made this statement: “I had a physical examination on July 12, 1935, and such examination showed I had hemorrhoids, broken arch in left foot and deafness in left ear.” Further physical examination of claimant was ordered by the board. It was made by Dr. Schoolfield, of Charleston, West Virginia. This examination revealed that claimant had very defective hearing, failing sight and very bad hemorrhoid's,' and was in no condition to serve in the department of public safety. This physician certified to the board of commissioners that to the best of his judgment and belief claimant was not physically qualified for service in the department. The said board refused claimant’s application for disability retirement, finding that the physical disability of claimant was not service connected.
We are impressed by the thought that notwithstanding the various questions presented by the record in support of claimant’s contention, and in opposition thereto, that a member of the department ascertained to be physically unfit for service therein should not be continued in such service. This conviction in the mind of superintendent Shingleton was evidently responsible for the first leave of absence of fifteen days, *168 the extension thereof for. a period of nine days, and the indefinite leave without pay.
Upon the whole record, as we view it, claimant was not physically qualified to render service in the department of public safety for the second year of his last enlistment therein. We cannot, therefore, recommend to the Legislature an appropriation for the payment of the salary claimed by him for that year, and an order will be entered by a majority of the court dismissing the claim.